UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MBRO CAPITAL, LLC,<br><br>                Plaintiff,<br>v.<br><br>MICHAEL I. STOLZAR and KARLEN,<br>STOLZAR & REIMANN, LLP,<br><br>                Defendants. | 3:09-cv-1688 (CSH) |

**ORDER ON MOTION TO DISMISS VOLUNTARILY WITHOUT PREJUDICE**

HAIGHT, Senior District Judge:

        Plaintiff MBRO Capital, LLC ("MBRO") filed this action against Defendants Michael Stolzar and the law firm of Karlen, Stolzar & Reimann, LLP ("KSR") on October 20, 2009. Plaintiff's Amended Complaint alleges diversity of citizenship as the basis of subject matter jurisdiction.[1] Plaintiff asserts claims for negligent misrepresentation arising from an opinion letter dated January 14, 2009 that Defendants issued to Plaintiff in connection with Plaintiff's loan to Cryptometrics, Inc., a client of the Defendants. Defendants answered the amended complaint on February 8, 2010. [Doc. 16]

        On April 1, 2010, Plaintiff MBRO filed a motion pursuant to Federal Rule of Civil Procedure 25(c) to substitute its assignee/transferee Security Concepts Group, LLC ("SCG") for MBRO as the plaintiff in this action. [Doc. 23] Defendants filed a response indicating that they

---

[1] The Amended Complaint adequately alleges diversity of citizenship. Both Plaintiff MBRO and Defendant KSR are alleged to be limited liability companies, making them citizens of any state where an equity-owning individual is domiciled. One member of MBRO is a citizen of Maine, and the other member of MBRO is a citizen of Connecticut. The three members of KSR, one of whom is individual Defendant Stolzar, are each alleged, on information and belief, to be citizens of New York. Amended Complaint [Doc. 7], ¶ 1.

had "initially intended to oppose MBRO's motion for substitution, and instead advocate joining SCG as a party without releasing MBRO" because of concerns about obtaining discovery from MBRO as a non-party. [Doc. 29 at ¶ 8] Nonetheless, Defendants consented to the substitution of SCG for MBRO, but only if the substitution were "expressly conditioned" on MBRO's continuing to provide discovery "as if MBRO were still a party." [Doc. 29 at ¶¶ 9-10] Defendants stated that Plaintiff had agreed to this condition. This proposal to release MBRO as a party but continue to treat it as if it were one struck the Court as a recipe for discovery disputes.

On June 11, 2010, rather than file a reply to the motion to substitute, Plaintiff MBRO filed a motion to withdraw its motion to substitute [Doc. 31], and filed the instant motion pursuant to Federal Rule of Civil Procedure 41(a)(2) to voluntarily dismiss this action without prejudice, noting that "Discovery has only just commenced in this action. The parties have negotiated a Rule 26(f) Scheduling Order, Plaintiff has served initial disclosures to Defendants, and Plaintiff has responded to Requests for Admissions served by Defendants. Plaintiff has also served Requests for Admission on Defendants; however, Defendants have not yet served responses to same." [Doc. 30 at ¶ 4]

On August 6, 2010, Defendants filed their opposition [Doc. 37] to Plaintiff's motion to voluntarily dismiss. Defendants argue that they will be prejudiced if the case is dismissed "without giving [Defendant] Stolzar the opportunity to clear his name." [Doc. 37 at 1] Of course, a voluntary dismissal without prejudice in no way constitutes a finding for Plaintiff on the merits. Defendants also maintain that Plaintiff fears an adverse decision on the merits in this Court, and that the motion to voluntarily dismiss is a "a blatant attempt at forum shopping and delay, and is an exercise in duplicative litigation," because Plaintiff wishes to pursue the case

instead in "state court, where the dockets are more congested," thus "guarantee[ing] that significant legal fees and costs will be incurred." *Id*. Defendants contend that they have already spent significant time and money preparing to defend this case in this Court, and that, contrary to Plaintiff's suggestion, their efforts will not be useful in defending the case in state court.

On August 11, 2010, notwithstanding the pendency of Plaintiff's motion to voluntarily dismiss, Defendants filed a motion pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. [Doc. 40] Over Defendants' opposition, the Court stayed briefing on the motion for judgment on the pleadings until after its ruling on Plaintiff's previously-filed motion for voluntarily dismissal without prejudice. [Doc. 46]

**STANDARD**

Federal Rule of Civil Procedure 41(a)(2) provides that "Except as provided in Rule 41(a)(1)[2], an action may be dismissed at the plaintiff's request only by a court order, on terms the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2). "Voluntary dismissal without prejudice is . . . not a matter of right. Factors relevant to the consideration of a motion to dismiss without prejudice include the plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss." *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)

---

[2] Federal Rule of Civil Procedure 41(a)(1) provides that, until the opposing party has served an answer or a motion for summary judgment, a plaintiff can unilaterally and without court order voluntarily dismiss an action without prejudice simply by providing notice. Here, Defendants have filed and served an answer, so a court order is required to dismiss the case, unless a stipulation of dismissal is signed by all parties who have appeared.

3

(citations omitted).

**DISCUSSION**

A. <u>Plaintiff's Diligence in Bringing the Motion</u>

The Complaint was filed on October 20, 2009 and the motion for voluntary dismissal was filed less than eight months later, on June 11, 2010. Defendants contend that Plaintiff was not diligent in bringing the motion because it "repeatedly sought extensions from the court." [Doc. 37 at 7] In fact, both parties sought extensions of various deadlines and Defendants consented to several of the extensions sought by Plaintiff. The total time elapsed since commencement of the action was only eight months, even with the extensions, which is not that long, considering that most cases require several years before they are trial ready.

MBRO assigned its rights to SCG in February 2010. Defendants maintain that "[a] diligent party would have filed a motion to dismiss without prejudice when it first considered such an assignment, not months after it was complete." [Doc. 37 at 10] However, Plaintiff filed its Motion to Substitute Party to address the assignment on April 1, 2010, less than two months after the assignment. When it became clear that Defendants opposed an unconditional substitution of SCG for MBRO as the plaintiff in this case, MBRO moved soon thereafter to voluntarily dismiss this action, and pursued the case in state court with what it believes to be the proper plaintiff, SCG, in light of the assignment.

B. <u>Undue Vexatiousness on Plaintiff's Part</u>

While Defendants attribute all manner of nefarious motives to Plaintiff, and Plaintiff returns the recriminations in kind, there is little evidence in the record to support the contention that Plaintiff has behaved in an unduly vexatious manner. A hostile and acrimonious relationship

between the parties, which clearly exists here, does not necessarily constitute undue vexatiousness. Defendants claim that Plaintiff brought this case knowing that it lacked merit and never intended to pursue it, but it is not clear how the court could determine that from the present record. Defendants also suggest that it is unduly vexatious on the part of Plaintiff MBRO that its assignee SCG has filed an action in state court against Defendants, but SCG is not a party to this action.

C.      Extent to which the Suit has Progressed

As Defendants concede, "The extent to which a suit has progressed is considered by many courts in the Second Circuit to be of 'primary importance.'" *Omega Inst., Inc. v. Universal Sales Sys., Inc.*, No. 08-cv-6473, 2010 U.S. Dist. LEXIS 10296, *12 (W.D.N.Y. Feb. 5, 2010) (citation omitted). This is so in part because the length of time which an action has been pending goes to the extent which a defendant will be prejudiced by a dismissal without prejudice. Here, only eight months had elapsed since the filing of the complaint before the motion for voluntary dismissal was filed. The case had not progressed far. Defendants had answered, the parties had conducted a Rule 26(f) scheduling conference, and discovery was in its initial phases. No depositions had been noticed or conducted and no dispositive motions filed. Pursuant to the Rule 26(f) agreement of the parties, the discovery deadline was not until March 30, 2011, the dispositive motions deadline was not until May 31, 2011, and the trial ready date was July 30, 2011. [Doc. 28] Typically, when a Rule 41(a)(2) motion for voluntary dismissal without prejudice is denied, it is because the case has been ongoing for years, significant time and resources have been invested such that Defendants will be prejudiced by dismissal, and/or the case is at or near trial. In *Zagano,* for example, which states the applicable test, the Second

Circuit affirmed as not an abuse of discretion the district court's denial of a Rule 41(a)(2) motion for voluntary dismissal without prejudice where the case had been ongoing for four years and trial was imminent. 900 F.2d at 14. In fact, Defendants have pointed the Court to only one case where a Rule 41(a)(2) motion was denied despite being brought within eight months of the action being commenced, and that case is easily distinguished.[3]

D. Defendants' Effort and Expense in Preparation for Trial, and the Duplicative Expense of Relitigation

The third factor, discussed above, regarding the extent to which the suit has progressed also includes a consideration of the "defendant's effort and expense in preparation for trial," while the similar fourth factor requires consideration of the duplicative expense of relitigation. *Zagano*, 900 F.2d at 14. Arguably, Defendants have not spent anything specifically in preparation *for trial*, because the case is so far short of being ready for trial. In any case, Defendants maintain that, because of MBRO's statements that it intended to aggressively pursue this litigation,[4] Defendants began preparing an equally vigorous defense. Defendants claim to have spent "tens of thousands of dollars in legal costs defending this action," [Doc. 37 at 16], including a review of its own documents, performing research, and preparing responses to Plaintiff's Requests for Admission, although Defendants never actually provided those responses

---

[3] In *Soul Circus, Inc. v. Trevanna Entm't, Inc.*, 249 F.R.D. 109 (S.D.N.Y. 2008), the court denied plaintiff's Rule 41(a)(2) motion for voluntary dismissal of a four month old case because the motion was made mere days after the court, in the course of a settlement conference, had made a negative assessment of plaintiff's likelihood of success on the merits. The Court concluded that plaintiff had been unduly vexatious and not diligent.

[4] Defendants' claim that Plaintiff expressed its intention to vigorously pursue this litigation appears to be at odds with Defendants' contention that Plaintiff never intended to pursue this case to a decision on the merits since Plaintiff knew such a decision would not be in its favor.

or any discovery documents to Plaintiff. It seems to the Court that some, although certainly not all, of this preparatory work is general enough that it will be transferrable to other litigation between MBRO, SCG, and the Defendants.

Defendants also state that their "present counsel of record is not admitted in the State Courts of Connecticut, so it is unknown whether she will be retained to represent [Defendants] on a *pro hac* basis," noting that it will lead to additional costs if alternative counsel is retained. [Doc. 37 at 17] The costs attendant to retaining different counsel are within Defendants' power to control and are not necessary, duplicative expenses of relitigation.

Nor does it appear that Defendants have made any attempt to control their litigation costs. Even after Plaintiff filed the motion for voluntary dismissal, which Defendants must have realized was likely to be granted under the applicable standard, Defendants prepared and filed a dispositive motion for judgment on the pleadings. Both Plaintiff and Defendants have filed voluminous briefs on essentially procedural motions that contain extensive, irrelevant arguments as to the underlying merits of the case, as well as rhetorical flourishes and gratuitous attacks on the other side. These were not necessary expenses of this litigation, and whether those costs will be duplicated in subsequent litigation is up to the parties.

E.  Adequacy of Plaintiff's Explanation for the Need to Dismiss

As described *supra*, during the pendency of this litigation, MBRO assigned its rights and remedies in the subject loan documents, including its claims against Defendants, to SCG. This was a significant change in the facts underlying the suit which merited action in conformity by Plaintiff. Thus, MBRO moved pursuant to Federal Rule of Civil Procedure 25(c) to substitute SCG for MBRO as the Plaintiff in this litigation. Defendants consented to the substitution, but

7

only on the condition that MBRO be required to continue to provide discovery as if it were a Plaintiff, even though it would no longer be one.[5] Soon thereafter, MBRO filed the instant motion for voluntary dismissal without prejudice, along with a motion to withdraw the motion to substitute. MBRO also notes, albeit for the first time on reply, that it no longer wishes to pursue any claims against Defendants which it may retain subsequent to the assignment because "it has been paid virtually in full" and "MBRO's remaining deficiency damages do not meet the jurisdictional amount in controversy of $75,000.00," thus depriving this Court of diversity jurisdiction. [Doc. 42 at 1] SCG is apparently already pursuing its claims against Defendants in state court. The Court finds Plaintiff's reasons for seeking a voluntary dismissal, including the assignment which occurred while this case was pending, to be sufficient, particularly given the early stage of this litigation.

F.     Defendants' Request for Fees, Costs and Expenses

In the alternative, Defendants request that, as a condition of granting the voluntary dismissal, the Court order Plaintiff to pay all of Defendants' fees, costs and expenses incurred in defending this action [Doc. 37 at 27-29], which Defendants have estimated to be "tens of thousands of dollars" [Doc. 37 at 16], notwithstanding that discovery has just begun. The Court finds the scope of this request unreasonable, and, for the reasons set forth in more detail *supra*,

---

[5] Defendants suggest that, notwithstanding Plaintiff's withdrawal of the motion to substitute, Rule 25(c) gives the court the power to order the substitution of SCG for MBRO on terms other than those previously proposed by Defendants, or to require MBRO to continue as plaintiff either with or without the addition of SCG. Defendants argue that, under Rule 25(c), "[T]here is *no* reason that the same claims and parties [that SCG has brought in state court] cannot be included in this pending action." [Doc. 37 at 22] However, it is one thing to say that Plaintiff could proceed with the action here; it is quite another to say that the Court should force it to do so, or that Plaintiff's desire to pursue the case differently in light of the assignment is not an adequate or valid explanation for its Rule 41(a)(2) motion.

including the early stage of this litigation and the extent to which Defendants failed to control their own costs, the Court finds that conditioning dismissal on Plaintiff's payment of Defendants' fees, costs, and expenses is not merited based on the record in this case.

G.      Defendants' Request to Seal

Defendants also request, if the case is voluntarily dismissed without prejudice, that the file be sealed, because Defendants will not have been afforded "the opportunity to vindicate [themselves] in such a public forum." [Doc. 37 at 29]  As lawyers, both Defendants and Defendants' counsel certainly understand that a voluntary dismissal without prejudice in no way constitutes a finding for either party on the merits of the underlying claim.  The request to seal the file is denied.

**CONCLUSION**

Plaintiff's Motion to Withdraw its Motion to Substitute Party [Doc. 31] is GRANTED, and Plaintiff's Motion to Substitute Party [Doc. 23] is ordered WITHDRAWN.  Plaintiff's Motion to Voluntarily Dismiss [Doc. 30] is GRANTED, and the case is hereby DISMISSED WITHOUT PREJUDICE.  Defendants' Motion for Judgment on the Pleadings [Doc. 40] is DENIED AS MOOT.  The Clerk shall close the case.

It is SO ORDERED.

Dated: New Haven, Connecticut

January 5, 2011

                                                                                                                                                                                                                                                             */s/ Charles S. Haight, Jr.*
                                                                                     Charles S. Haight, Jr.
                                                                                     Senior United States District Judge